IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

DONNA MCMILLAN, *et al.*,

Plaintiffs,

v.

WELLS FARGO BANK, N.A.,

Defendant.

No. C 08-05739 WHA

**ORDER GRANTING MOTION FOR LEAVE TO AMEND AND SETTING PROCEDURE TO RESOLVE VENUE ISSUE**

**INTRODUCTION**

In this putative class action, plaintiffs move for leave to file a second amended complaint. For the reasons stated below, plaintiffs' motion is **GRANTED** subject to a further motion to dismiss for improper venue.

**STATEMENT**

The essence of the case is that various out-of-state bank depositors wish to take advantage of California law and to bring class actions against Wells Fargo Bank in California rather than face almost certain refusals to allow class actions in their home states. The problem arises because one of the bank's standardized deposit agreements calls for litigation to be brought in the state where the account is maintained and includes a waiver of the right to bring class actions, or so Wells Fargo contends. California, however, refuses to enforce the anti-class action proviso in the form agreement. The question now presented is whether these non-California plaintiffs have found a way around these provisions.

Plaintiffs are six non-California residents: (1) Donna McMillan resides in Minnesota; (2) Terry and Kristy Dagenhart, husband and wife, reside in Texas; (3) Marc Martinez resides in New Mexico; (4) William Ketterhagen resides in Colorado; and (5) Dolores Gutierrez resides in Oregon. In a challenge to certain practices regarding checking account service charges, plaintiffs filed a first amended complaint on February 11, 2009, alleging violations of the Consumer Legal Remedies Act, Unfair Business Practices Act, and False Advertising Law. They also asserted claims for breach of contract, unjust enrichment, and conversion.

They challenge two bank practices: (1) the "re-sequencing scheme" and (2) the "undisclosed overdraft scheme" (Compl. ¶¶ 3–4). The first addresses the bank's practice of re-sequencing electronic debit transactions from greatest to lowest to maximize the number of overdraft fees the bank can charge in overdraft situations. The second attacks the bank's practice of approving transactions for amounts greater than the funds customers have available in their accounts and charging an overdraft fee without first providing the customer with the opportunity to avoid the fee by paying with an alternate method or foregoing the transaction.

When an account is opened with Wells Fargo, the customer signs a signature card and is provided a standardized consumer account agreement or so the bank contends. The form contains the following language (De Rivera Exh. A at 33–34) (emphasis added):

> **Laws Governing Your Account.** Your Account is governed by the laws and regulations of the United States and, to the extent applicable, *the laws of the state in which the office of the Bank that maintains your Account is located (unless the Bank has notified you in writing that the laws of another state shall govern your Account)*, without regard to conflicts of laws principles, or clearing house rules and the like. If you were not physically present at an office of the Bank when you opened your Account (for example if you opened your Account by phone, through the mail, or over the Internet), *your Account will be governed by the laws of the state in which the main office of the Bank is located* unless the Bank notifies you that your Account has been assigned to a particular office of the Bank . . . .
>
> The Bank and you agree that any lawsuits, claims, or other proceedings arising from or relating to your Account or this Agreement, including without limitation, the enforcement of the Arbitration Agreement in this Agreement and the entry of judgment on any arbitration award, shall be venued exclusively in the state or federal courts in the state whose laws govern your Account (unless the Bank has notified you that your Account will be assigned to a particular office, in which case, it shall be venued

2

1         exclusively in the state or federal courts located in the state in
2         which that office is located), without regard to conflict of laws principles.

3 Thus, the forum-selection clause designates the state whose laws govern the account as the
4 exclusive venue and, in turn, the choice-of-law clause provides that the governing law is the
5 law of the state where the account is located (unless the bank notifies the consumer that the
6 account is assigned to a different state). The accounts are maintained in the plaintiffs' home
7 states, according to the bank, not in California.

8     If this were the only clause in question, the issue would be easier, but there are other
9 arguably conflicting clauses in other forms. Wells Fargo has a website with a general
10 terms-of-use page *invoking California law*. Those terms of use do *not* contain a forum-selection
11 clause. The terms of use contain the following language (Brown Exh. C at 1–2; emphasis
12 added):

13         This Site and *any of the services provided by Wells Fargo in connection with this Site (the "Services")* are being provided to
14         you expressly subject to these Terms of Use. Please read these Terms of Use carefully. By accessing this Site you agree to be
15         bound by these Terms of Use.

16         "Services" under these Terms of Use *include financial services for consumers* and businesses and business services offered to you
17         directly by Wells Fargo, and additional services available to you from independent third party service providers accessed through
18         navigation from the Site.

19         \*        \*        \*

20         These Terms of Use constitute a contract between you and Wells Fargo governed by the laws of the State of California, with
21         the exception of its conflicts of laws provision.

22 Plaintiffs use Wells Fargo's website for online banking services. So, presumably California law
23 and the website terms cover at least some aspects of their online banking. In turn, this might
24 anchor venue in California under the forum-selection clause referenced above, which is tied to
25 the state whose laws govern the account.

26     To exacerbate the problem, to qualify for the online services of Wells Fargo here at issue,
27 customers must click on the "I agree" box and thereby acquiesce in a 28-page single-spaced
28 document called the "Online Access Agreement for Wells Fargo Online and Wells Fargo

3

Business Online Services." Among many other things, it provides (De Rivera Exh. B at 3–4; emphasis added):

### C. Conflicts between agreements

> If this Agreement conflicts with the other agreement, or the other agreement has terms that are not addressed in this Agreement, then the other agreement will control and take precedence, unless this Agreement specifically states otherwise. The other agreement will only control with respect to the Eligible Account or Online Financial Service it is associated with, and only to the extent necessary to resolve the conflict or inconsistency. Additional provisions regarding online services or features that appear in the specific agreement for your Eligible Account or Online Financial Service, but that do not appear in this Agreement, will apply.
>
> To illustrate the rule in the preceding paragraph, if your Eligible Account or Online Financial Service is covered by another agreement and a dispute arises between you and us under that agreement, then the dispute resolution provisions in that other agreement will control and take precedence over the dispute resolution provisions in this Agreement.
>
> As an exception to the general rule described in this Section 1, *if any other agreement you have with us includes terms that address your online access to an Eligible Account established primarily for personal, family or household purposes, this Agreement will control and take precedence in resolving any inconsistencies between this Agreement and the terms in the other agreement that address online access*.

Later in the same document is a Section 21(C) entitled "Governing law." It states (De Rivera Exh. B at 27; emphasis added):

> Each of your Eligible Accounts and Online Financial Services will continue to be read and interpreted according to the laws described in the agreements you have with us regarding those Eligible Accounts or Online Financial Services (for example, your deposit account agreement or your credit card agreement with us). This Online Access Agreement, on the other hand will be read and interpreted according to the laws of the State of California, without regard to conflict-of-law rules. *Subject to the provision of Section 19 of this Agreement on dispute resolution, California state courts and U.S. federal courts located in San Francisco, California, will be the only courts where legal actions regarding this Online Access Agreement can be brought.* In any legal action or claim regarding this Online Access Agreement, the prevailing party will be entitled to recover costs and reasonable attorney fees.

Significantly, this forum-selection clause calls for all litigation to be in San Francisco.

\*          \*          \*

4

Invoking the forum-selection clause in the first-mentioned form, the consumer account agreement, Wells Fargo previously moved to dismiss on the basis of improper venue. The bank argued that the forum-selection clause in that form required plaintiffs to file suit in the state whose laws governed their account, which venues translated to their respective states of residence in this action. Because plaintiffs all reside outside of California, Wells Fargo asserted that plaintiffs could not bring suit in California. An order dated April 17, 2009, agreed. Now, however, the further forms and website provisions are raised. They were not on the table in the earlier order. The problem is now more complicated.

**ANALYSIS**

If the only form agreement were the sixty-page standardized consumer account agreement, then the Court would be inclined to enforce its forum-selection clause save and except for one issue — only recently raised — that the agreement was *not* provided in a timely way to plaintiffs and thus was never valid in the first place. Fact questions are now raised that cloud that picture. Further briefing is needed to sort out those facts and their legal effect. Clouding the picture even more are at least three other "agreements" used by Wells Fargo with the very same customers.

*First*, there is the signature card, now called the "Consumer Account Application" (Chavez Exh. 1). It recites that the applicant has received a copy of "the applicable account agreement." Oddly, it does *not* actually say what account agreement is applicable. And, it omits any acceptance of any terms of said document other than one — the "dispute resolution program described in the account agreement." As to the latter, the applicant agrees that "our disputes will be decided before one or more neutral persons in an arbitration proceeding and not by a jury trial or a trial before a judge." No forum-selection clause is included. Nor is there any class action waiver.

*Second*, as stated, the bank's website states that its online services, *including its financial services*, will be governed by California law.

*Third*, the bank's 28-page Online Access Agreement provides that it will be read and interpreted under California law and *that the only courts in which legal action may be brought*

5

1  *shall be in state or federal court in San Francisco.* It further has a provision explaining how
2  conflicts among the bank's own forms are to be resolved. After stating that the Online Access
3  Agreement will yield to any other agreement, it states an exception quoted above but repeated
4  here:

> If any other agreement you have with us includes terms that address your online access to an Eligible Account established primarily for personal, family or household purposes, *this Agreement will control and take precedence in resolving any inconsistencies . . . .*

8  In other words, in the circumstance described, the online agreement is paramount. Arguably,
9  this is the case of an exception swallowing the rule. This is the same agreement that demands,
10 as stated, that all lawsuits be brought in San Francisco. To be sure, that right is subject to an
11 arbitration clause and a class-action waiver clause, the latter of which is void in California,
12 but venue is expressly anchored in either a state or federal court in San Francisco, even for
13 non-California residents. (It is somewhat incongruous, however, that the proposed pleading
14 does not seek to rely on the Online Access Agreement, a point which arguably cuts against
15 placing venue here.)

                            *         *         *

17       Federal law is applied to the interpretation of forum-selection clauses and this is
18 guided by general principles for interpreting contracts. *Doe I v. AOL LLC*, 552 F.3d 1077,
19 1081 (9th Cir. 2009). Those general principles are very hard to apply on an undeveloped record
20 with so many fact issues and so many forms, at least one of which expressly places venue in this
21 very court.

22       The task is not so simple as reading the various arguably conflicting forms and devising
23 some master reconciliation. Fact issues are presented as to whether certain forms were ever
24 agreed to — or even received — in the first place and whether there was fraud in the
25 inducement. It would also help to illuminate the context surrounding each of the alleged
26 contracts, such as what discussions took place between the bank employee and the customer, any
27 variations from standard procedure that occurred in the case of the individual plaintiffs, the

6

connection between any online services and the overdrafts at issue and whether the context indicates which forum-selection clause was intended to apply.

This order finds that fact questions need development and the record needs improvement before further resolution of the battle of the forms (all of which are the bank's *own* forms) can be sorted out. Therefore, since it cannot be said as a matter of law which, if any, forum-selection clause applies and cannot yet be said as a matter of law that plaintiffs can obtain no relief from this Court, the motion for leave to file the complaint will be **GRANTED**, subject to motion practice to dismiss for lack of venue after the discovery set forth below.

The Court notes that the tendered amended complaint does not expressly rely on the forum-selection clause calling for exclusive venue in San Francisco. Perhaps this omission was calculated. Perhaps it was an oversight. To avoid yet another request later for leave to amend, plaintiffs may have until **JUNE 22, 2009, AT NOON** to file either the proposed amended complaint already tendered or one that is revised to meet any and all matters of which counsel or plaintiffs are on notice. Plaintiffs should plead their best case, for it is unlikely that further amendments will be warranted.

Before any further Rule 12(b)(3) motion is made, the following discovery should occur.

1. All plaintiffs should be deposed on the subject of the precise sequence of events as to all alleged agreements in play and the precise handling of their account openings and alleged agreements and anything else bearing on the issues in play. Since plaintiffs are the ones desiring litigation in this district, they should appear for one day here in this district for their depositions, without prejudice to other depositions of them later on. Merits-based questions must be answered if there is any plausible connection to the question of the competing forum-selection clauses.

2. Plaintiffs' counsel may take up to six one-day depositions of current or former bank personnel on the same subject as set forth in the prior paragraph, *i.e.*, the specific procedures followed in the case of the named plaintiffs concerning all "agreements" in play and on the general question of the

7

1  forum-selection clause.  Questions of class-wide applicability must be answered if
2  there is any plausible connection to the question of what happened in the cases of
3  the individual plaintiffs.
4      3.     Before the depositions, both sides must produce documents
5  (including electronic documents) as follows:
6          (a)     The bank must produce all documents that
7  summarize, describe or refer to the purpose and intent of any of the
8  agreements in play herein and/or the website but only insofar as
9  they relate to the signature card, the forum-selection clauses, the
10 arbitration clauses, the class-action waiver clauses, the sequencing
11 of debit items, or the bank's overdraft policy.
12         (b)     The bank must also produce all manuals, policies
13 and practice materials that fully summarize, describe or refer to the
14 procedures that were actually used or were supposed to have been
15 used to open an account insofar as those procedures related to any
16 of said subjects in (a).
17         (c)     The bank must also produce all contract and notice
18 documents pertaining to any individual plaintiff.
19         (d)     Plaintiffs shall produce any and all materials they
20 received in connection with the opening of the account or
21 thereafter concerning the possible or actual terms and conditions of
22 the account, including any notices or form agreements sent to them
23 by the bank and all documents that constitute, summarize or
24 describe any statement made by them on the subject of this
25 litigation on the issues relevant to clauses in question.
26         (e)     Both sides must produce any and all documents
27 they intend to rely on or which they know or should know

contradict or bear directly on any position they have taken or plan to take in this litigation on the forum-selection clauses.

   (f) All documents must be produced by **JULY 3, 2009**. Documents prepared more than four years ago or after this lawsuit was filed need not be produced for the time being. Only the above discovery will be allowed for now but, by **JUNE 17 AT NOON**, each side may file requests to supplement or to modify the foregoing discovery plan and the Court will consider them. Any request to supplement must be very narrow and reasonable.

   (g) All depositions must be completed by **JULY 24, 2009**.

By **AUGUST 6, 2009**, Wells Fargo may file a new Rule 12(b)(3) motion for a normal 35-day track. Counsel must agree on and supply a single joint appendix of sequentially numbered exhibits and may not supplement with strays. Declarations may authenticate exhibits by referring to the joint appendix number. For example, the standard form consumer account agreement should be "TX 1" and so referenced by both sides. The briefing should provide authorities on point for all questions and should address, among other things, the issue of contract formation when the form is delivered *after* opening the account, whether an evidentiary hearing is advisable to sort out the facts, and to what extent and under what circumstances a welter of conflicting forum-selection clauses in overlapping form agreements can be held unenforceable.

On the contingency that the action is allowed to go forward in this district, the bank must file any motion to compel arbitration or it shall be deemed waived. Said motion must address whether arbitration proceedings allow for a class adjudication and, if so, under what circumstances. This shall be briefed on the same schedule as above but will be directed and heard only after the resolution of the form-selection clause issue. The Court expects such briefing will shed some light on the interlocking workings of the various provisions at issue. This should be separate from and in addition to the briefing on the forum-selection clause.

Please do not ask for any continuances inasmuch as the undersigned judge would like the assistance of his current law clerk to complete this phase of the case.

### CONCLUSION

Subject to the schedule set forth above, leave to file an amended complaint is **GRANTED**.

**IT IS SO ORDERED.**

Dated: June 12, 2009.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE