Sonya D. Winner, SB # 200348
David M. Jolley, SB # 191164
Bryanne J. Schmitt, SB # 257534
Steven D. Sassaman, SB # 258021
COVINGTON & BURLING LLP
One Front Street
San Francisco, CA 94111
Telephone: (415) 591-6000
Facsimile: (415) 591-6091
E-mail: swinner@cov.com

Attorneys for Defendant
WELLS FARGO BANK, N.A.

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DONNA MCMILLAN, TERRY DAGENHART and KRISTY DAGENHART as husband and wife, WILLIAM KETTERHAGEN, DOLORES GUTIERREZ, MARC MARTINEZ, Individually and on Behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>WELLS FARGO BANK, N.A.<br><br>Defendant. | Civil Case No.: C 08-05739-WHA<br><br>**NOTICE OF MOTION AND MOTION OF DEFENDANT WELLS FARGO BANK, N.A. TO COMPEL ARBITRATION AND TO STAY PROCEEDINGS**<br><br>Date: September 10, 2009<br>Time: 8 a.m.<br>Dept.: Courtroom 9<br><br>Honorable William H. Alsup |

# **TABLE OF CONTENTS**

**Page**

NOTICE OF MOTION ............................................................................................................. 1

I. INTRODUCTION AND SUMMARY OF ISSUES TO BE DECIDED ......................... 2

II. STATEMENT OF FACTS ............................................................................................. 3

III. ARGUMENT .................................................................................................................. 5

    A. The Court Should Defer Any Ruling on This Motion Until the Question of the Transfer of This Action Is Resolved. ........................................ 6

    B. The Court Should Compel Arbitration of the Claims of Kristy and Terry Dagenhart and William Ketterhagen. ........................................................ 6

        1. The Parties Have a Valid Written Arbitration Agreement. ...................... 7

        2. The Dispute Between the Parties Falls Within the Scope of the Arbitration Agreement. .............................................................................. 9

        3. Plaintiffs Cannot Avoid Arbitration Through Reliance on California Law. .......................................................................................... 11

    C. The Non-Arbitrable Claims in This Litigation Must Be Stayed. ......................... 12

IV. CONCLUSION ............................................................................................................. 13

# TABLE OF AUTHORITIES

Page(s)

**FEDERAL CASES**

*AT&T Techs., Inc. v. Communications Workers of Am.,*
    475 U.S. 643 (1986) ................................................................................................. 7, 9, 10, 12

*Bonanno v. Quizno's Franchise Co., LLC.,*
    2009 WL 1068744 (D. Colo. Apr. 20, 2009) .......................................................................... 8

*Carter v. Countrywide Credit Indus. Inc.*,
    362 F.3d 294, 301 (5th Cir. 2004) .......................................................................................... 9

*Chalk v. T-Mobile USA, Inc.,*
    560 F.3d 1087 (9th Cir. 2009) ................................................................................................ 9

*Comedy Club, Inc. v. Improv W. Assocs.,*
    553 F.3d 1277 (9th Cir. 2009) .......................................................................................... 9, 12

*Dean Witter Reynolds v. Byrd,*
    470 U.S. 213 (1985) ................................................................................................................ 7

*Edwards v. Blockbuster Inc.,,*
    400 F. Supp. 2d 1305 (E.D. Okl. 2005) .................................................................................. 8

*Houlihan v. Offerman & Co., Inc.,*
    31 F.3d 692 (8th Cir. 1994) .................................................................................................... 7

*Howsam v. Dean Witter Reynolds, Inc.,*
    537 U.S. 79 (2002) .................................................................................................................. 7

*Iberia Credit Bureau, Inc. v. Cingular Wireless LLC*,
    379 F.3d 159 (5th Cir. 2004) .................................................................................................. 9

*Inlandboatmens Union of the Pac. v. Dutra Group,*
    279 F.3d 1075 (9th Cir. 2002) .............................................................................................. 10

*Jenkins v. First Am. Cash Advance of Ga. LLC,*
    400 F.3d 868 (11th Cir. 2005) ................................................................................................ 8

*Johnson v. W. Suburban Bank,*
    225 F.3d 366  (3rd Cir. 2000) ................................................................................................ 9

*Kuehner v. Dickinson & Co.,*
    84 F.3d 316 (9th Cir. 1996) .................................................................................................... 7

*Levya v. Certified Grocers of Cal. Ltd.,*
    593 F.2d 857 (9th Cir. 1979) ................................................................................................ 12

*Livington v. Assocs. Fin., Inc.*,
    339 F.3d 553, 559 (7th Cir. 2003) ........................................................................................9

*McMahan Sec. Co. L.P. v. Forum Capital Mkts. L.P.*,
    35 F.3d 82 (2d. Cir. 1994) ..................................................................................................12

*Mediterranean Enters., Inc. v. Ssangyong Corp.*,
    708 F.2d 1458 (9th Cir. 1983) ............................................................................................12

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
    473 U.S. 614 (1985)..............................................................................................................7

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
    460 U.S. 1 (1983)....................................................................................................6, 10, 12

*Ornelas v. Sonic-Denver T, Inc.*,
    2007 WL 274738 (D. Colo. Jan. 29, 2007) ..........................................................................8

*Roderick v. Mazzetti & Assocs., Inc.*,
    2004 WL 2554453 (N.D. Cal. Nov. 9, 2004) ....................................................................12

*Schoenduve Corp. v. Lucent Techs., Inc.*,
    442 F.3d 727 (9th Cir. 2006) ..............................................................................................10

*Simula, Inc. v. AutoLiv, Inc.*,
    175 F.3d 716 (9th Cir. 1999) ...............................................................................7, 8, 9, 10

*Snowden v. CheckPoint Check Cashing*,
    290 F.3d 631 (4th Cir. 2002) ................................................................................................9

*United Computer Sys., Inc. v. AT&T Corp.*,
    298 F.3d 756 (9th Cir. 2002) ................................................................................................7


**STATE CASES**

*AutoNation USA Corp. v. Leroy,*
    105 S.W.3d 190 (Tex. App. 2003)........................................................................................8

*Capital Income Props.-LXXX v. Blackmon,*
    843 S.W.2d 22 (Tex. 1992) ..................................................................................................8

*Discover Bank v. Super. Ct.*,
    134 Cal. App. 4th 886 (2006) ..............................................................................................9

*Fiser v. Dell Computer Corp.*,
    188 P.3d 1215 (N.M. 2008) ..................................................................................................9

**FEDERAL STATUTES**

9 U.S.C. §§ 1-16 ...................................................................................................................1

9 U.S.C. § 2..........................................................................................................................6

9 U.S.C. § 3.....................................................................................................................7, 12

**RULES**

Fed. R. Civ. P. 12(b)(3) ....................................................................................................2, 5

# NOTICE OF MOTION

PLEASE TAKE NOTICE that on September 10, 2009, at 8 a.m. in the courtroom of the Honorable William H. Alsup, United States District Court for the Northern District of California, San Francisco Division, 450 Golden Gate Ave., Courtroom 9, 19th Floor, San Francisco, California, or at such date and time as the Court may otherwise direct, defendant Wells Fargo Bank, N.A. ("Wells Fargo") will move and hereby does move the Court for an order compelling plaintiffs to arbitrate the claims of plaintiffs Terry Dagenhart, Kristy Dagenhart, and William Ketterhagen, and staying the remainder of this action pending such arbitration.

This Motion is made pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16, the arbitration agreement existing between Wells Fargo and each of these plaintiffs, and the laws of Texas and Colorado, on the grounds (i) that the FAA requires these plaintiffs to arbitrate their claims in accordance with their written arbitration agreements and (ii) the FAA further requires that the remainder of this action be stayed pending that arbitration. The motion is based on this notice, the memorandum of points and authorities set out below, and the accompanying Declaration of Bryanne J. Schmitt ("TX 34"), together with such further argument and evidence as the Court shall permit.

Pursuant to the Court's Order of June 12, 2009, the evidentiary materials cited in support of this Motion will be submitted in a single Appendix that collects all exhibits and other evidentiary materials submitted by the parties in connection with this Motion and Wells Fargo's Motion to Dismiss the Second Amended Complaint. The materials cited herein to be included in the Appendix (cited as "TX __") will be served on plaintiffs but not filed at this time; the full Appendix, including any additional evidence cited in plaintiffs' Opposition, will be filed with the Court along with Wells Fargo's Reply.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION AND SUMMARY OF ISSUES TO BE DECIDED

In its June 12, 2009 Order granting plaintiffs' motion for leave to amend, the Court instructed that Wells Fargo file any motion to compel arbitration at the same time the bank filed a new motion seeking dismissal of the case under Fed. R. Civ. P. 12(b)(3). Order Granting Motion for Leave to Amend and Setting Procedure to Resolve Venue Issue (Dkt. No. 67) ("June 12 Order") at 9. This motion to compel arbitration is to be briefed on the same schedule as the new motion to dismiss, but will be heard by the Court only if the underlying action is permitted to go forward. *Id.* Pursuant to this order, Wells Fargo files this Motion to Compel Arbitration and to Stay Proceedings.

At the outset, Wells Fargo notes that this case is subject to a Conditional Transfer Order from the Judicial Panel on Multidistrict Litigation transferring it to the Southern District of Florida. *See* TX 31. If this action survives Wells Fargo's motion to dismiss, any additional pre-trial proceedings (including determinations of arbitrability) would best be left for uniform treatment with other similar actions, including actions governed by the laws of the same states, after the transfer is completed. Wells Fargo therefore asks that this Court defer any ruling on this Motion until after the Conditional Transfer Order is either finalized or vacated.

If and when the Court moves forward with this Motion, Wells Fargo requests that the Court compel arbitration of the arbitrable claims of plaintiffs Kristy Dagenhart, Terry Dagenhart, and William Ketterhagen, whose Wells Fargo accounts are maintained in their home states of Texas and Colorado. Each of these plaintiffs has agreed in writing to abide by the dispute resolution provisions of their account agreements with Wells Fargo. Those provisions permit either the bank or its customers to require unresolved disputes between them to be submitted to binding arbitration in lieu of resolution in a court of law.

Because the arbitration agreement at issue here includes a class waiver, it is not enforceable under the existing law of the states where the other two remaining plaintiffs reside. Wells Fargo accordingly does not move to compel arbitration of the claims of those plaintiffs (although it reserves the right to do so should the law in those states change in future).

However, this arbitration agreement is fully enforceable under the laws of Texas and Colorado, as plaintiffs themselves have acknowledged in their previous briefs in this case. *See* Plaintiffs' Opp. to Motion to Dismiss (Dkt. No. 25) at 11 n.4.

The Federal Arbitration Act strongly encourages the enforcement of arbitration agreements, and the Supreme Court has held that the presence of such an agreement in a contract creates a presumption of arbitrability. Wells Fargo therefore respectfully requests that this Court compel the arbitration of the claims alleged by the Dagenharts and Ketterhagen and stay the remainder of the proceedings pending resolution of the arbitrable issues.

## II.   STATEMENT OF FACTS

Plaintiffs Kristy Dagenhart and Terry Dagenhart are residents of Texas, where their Wells Fargo account that is the subject of this litigation was opened. SAC ¶ 16. William Ketterhagen resides in Colorado and opened his Wells Fargo checking account in that state. SAC ¶ 18.[1] While opening (or, in Terry Dagenhart's case, joining) the individual checking accounts that are the subject of this litigation, each of these plaintiffs signed a Consumer Account Application and/or a Consumer Account Application for Relationship Change acknowledging:

> "I have received a copy of the applicable account agreement and privacy brochure and agree to be bound by them, **including the terms of the Direct Deposit Advance Service described in the account agreement. I also agree to the terms of the dispute resolution program described in the account agreement. Under this program our disputes will be decided before one or more neutral persons in an arbitration proceeding and not by a jury trial or a trial before a judge.**"

TX 6 (bolded text in underlining and original).[2]

---

[1]   Plaintiffs dismissed named plaintiff Donna McMillan from the case on July 29, 2009. (Dkt. No. 86.) The remaining two plaintiffs reside in New Mexico (Martinez) and Oregon (Gutierrez). SAC. ¶¶ 17, 19.

[2]   *See also* TX 2-3. The full text of this paragraph on Kristy Dagenhart's original account application differed slightly from that on applications signed by the other plaintiffs, but the language discussing dispute resolution was identical. *See* TX 2. Moreover, she also signed the "Consumer Account Application for Relationship Change" signed by her husband when he was added to the account. TX 3. That document also included the language quoted above.

MOTION TO COMPEL ARBITRATION AND TO STAY PROCEEDINGS
Civil Case No.: C 08-05739-WHA

3

Wells Fargo's Consumer Account Agreement contains a section unambiguously labeled "Dispute Resolution Program: Arbitration Agreement" that provides in relevant part:

> **"Non-Judicial Resolution of Disputes.**  If you have a dispute with the Bank, and you are not able to resolve the dispute informally, you and the Bank agree that any dispute between or among you and the Bank, regardless of when it arose, shall be resolved by the following arbitration process.  **You understand and agree that you and the Bank are each waiving the right to a jury trial or a trial before a judge in a public court.**
>
> **Disputes.**  A dispute is any unresolved disagreement between or among you and the Bank (and its employees, officers, directors, attorneys, and other agents), arising out of or relating in any way to your Account and/or Services.  It includes any dispute relating in any way to your Accounts and Services; to your use of any Bank location or facility; or to any means you may use to access the Bank, such as an automated teller machine (ATM) or Online banking.  It includes claims based on broken promises or contracts, torts (injuries caused by negligent or intentional conduct) or other wrongful actions.  It also includes statutory, common law and equitable claims.  A dispute also includes any disagreement about the meaning of this Arbitration Agreement, and whether a disagreement is a "dispute" subject to binding arbitration as provided for in this Arbitration Agreement.  **A dispute does not include a claim that may be filed in small claims court.  If you have a dispute that is within the jurisdiction of the small claims court, you should file your claim there.**
>
> **Binding Arbitration.**  Binding arbitration is a means of having an independent third party resolve a dispute without using the court system, judges or juries.  Either you or the Bank may require the submission of a dispute to binding arbitration at any reasonable time notwithstanding that a lawsuit or other proceeding has been commenced.  If either you or the Bank fails to submit to binding arbitration following a lawful demand, the one who fails to so submit bears all costs and expenses (including attorney's fees and expenses) incurred by the other compelling arbitration.
>
> **Neither your nor the Bank shall be entitled to join or consolidate disputes by or against others in any arbitration, or to include in any arbitration any dispute as a representative or member of a class, or to act in any arbitration in the interest of the general public or in a private attorney general capacity.**"

TX 1 at 8-9 (bolded text in original).

In disregard of this agreement, plaintiffs Kristy Dagenhart, Terry Dagenhart, and William Ketterhagen have filed this lawsuit against Wells Fargo in this Court.  Their Second Amended Complaint accuses the bank of "reordering the sequence" of transactions posting to

1  the plaintiffs' checking accounts and of failing to provide notice to the plaintiffs before
2  approving transactions that might result in overdraft fees. SAC ¶ 13. Each of these general
3  allegations, as well as the individual allegations of Kristy Dagenhart, Terry Dagenhart, and
4  William Ketterhagen, relate to the accounts described in Wells Fargo's Consumer Account
5  Application. SAC ¶¶ 62-64, 66-67, 86-87; *see* TX 2-3; TX 6.
6  Pursuant to Section 4 of the FAA, on July 29, 2009, counsel for Wells Fargo,
7  sent a letter by electronic mail and U.S. mail to Ari Brown, counsel for plaintiffs, demanding
8  that plaintiffs submit to individual arbitration of their claims, as required by the parties' written
9  arbitration agreement. TX 32. The letter demanded that, if plaintiffs wished to pursue their
10 claims against Wells Fargo, they initiate arbitration proceedings on an individual basis or bring
11 suit in small claims court. *Id.* As of this filing, plaintiffs have not responded to that letter.
12 On June 10, 2009, the Judicial Panel on Multidistrict Litigation issued a Transfer
13 Order creating an MDL docket in the Southern District of Florida for "overdraft actions" against
14 various banks addressing claims similar to those presented in this case. TX 30. In issuing that
15 Order, the Panel rejected arguments presented by certain parties (including other plaintiffs who
16 had filed suit against Wells Fargo) that separate MDL dockets be created for cases against
17 different banks and/or that this Court be the designated forum for one or more such dockets. *Id.*
18 at 2. On June 25, 2009, the Panel issued a Conditional Transfer Order transferring this action to
19 the Southern District of Florida. TX 31. Plaintiffs have filed a Motion to Vacate that order,
20 presenting arguments that largely repeat those previously rejected by the Panel. TX 34
21 ¶ 36. Briefing of that motion is underway. *Id.*

22 **III. ARGUMENT**

23 Wells Fargo files this Motion pursuant to the Court's June 12, 2009 Order, which
24 instructed the bank to bring any motion to compel arbitration at the same time it moved to
25 dismiss the Second Amended Complaint under Fed. R. Civ. P. 12(b)(3). June 12, 2009 Order at
26 9. Should the Court grant Wells Fargo's Motion to Dismiss, this Motion will be moot. If the
27 Court denies the Motion to Dismiss in whole or in part, it should defer ruling on this Motion
28 until the Judicial Panel on Multidistrict Litigation reaches its final decision on whether to

transfer this action to the Southern District of Florida.  However, if and when the Court addresses this Motion, it should compel arbitration of the arbitrable claims presented in the SAC and stay the remainder of the action.

### A. The Court Should Defer Any Ruling on This Motion Until the Question of the Transfer of This Action Is Resolved.

In the event the Court does not dismiss this action, it should nonetheless defer any ruling on the issue of arbitration.  It now appears likely that this case will become part of a multidistrict litigation pending in the Southern District of Florida.  Wells Fargo understands that motions to compel arbitration are pending in some of the overdraft actions already transferred to the Southern District of Florida, and that the arbitrability of disputes involving overdraft fees will therefore likely be an early subject of coordinated decision in that court.[3]  Questions concerning the arbitrability of cases transferred into the multidistrict proceeding should be resolved on a consolidated basis, so as to avoid the danger of inconsistent rulings and to preserve judicial resources.  Wells Fargo therefore requests that this Court defer its consideration of this Motion to Compel Arbitration until such time as the Judicial Panel on Multidistrict Litigation has finally determined whether this action will be transferred.

### B. The Court Should Compel Arbitration of the Claims of Kristy and Terry Dagenhart and William Ketterhagen.

The FAA mandates that written agreements to arbitrate disputes "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  Congress enacted the FAA to ensure the "rapid and unobstructed enforcement of arbitration agreements."  *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 23 (1983).  The FAA establishes a public policy that strongly favors arbitration of disputes and requires courts to enforce arbitration agreements.  *See id.* at 24;

---

[3]   *See* TX 34 ¶ 37.  Moreover, a separate conditional transfer order has been entered to transfer to the Southern District of Florida at least one other case against Wells Fargo involving a plaintiff from a state (Colorado) whose law is also implicated in this suit.  *See* TX 33 (conditionally transferring *Egan v. Wells Fargo,* No. 09-cv-00253-MSK-MEH (D. Col.)).  Wells Fargo has also moved to enforce the arbitration agreement in *Egan*.  TX 34 ¶ 35.

1  *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,* 473 U.S. 614, 625-26 (1985);

2  *Kuehner v. Dickinson & Co.,* 84 F.3d 316, 319 (9th Cir. 1996).

3          The FAA requires the Court to compel arbitration if the parties have agreed in

4  writing to arbitrate an issue underlying the pending action.  9 U.S.C. § 3.  Section 3 of the FAA

5  states in relevant part:

> "If any suit or proceeding be brought in any of the courts of the
> United States upon any issue referable to arbitration under an
> agreement in writing for such arbitration, the court in which such
> suit is pending, upon being satisfied that the issue involved in
> such suit or proceeding is referable to arbitration under such an
> agreement, shall on application of one of the parties stay the trial
> of the action until such arbitration has been had in accordance
> with the terms of the agreement, providing the applicant for the
> stay is not in default in proceeding with such arbitration."

11          The underlying merits of the case are irrelevant to a motion to compel arbitration.

12  *AT&T Techs., Inc. v. Communications Workers of Am.,* 475 U.S. 643, 649 (1986).  Instead, the

13  Court need only determine (i) that there is a valid written arbitration agreement and (ii) that the

14  dispute falls within the scope of the arbitration agreement.  *United Computer Sys., Inc. v. AT&T*

15  *Corp.,* 298 F.3d 756, 766 (9th Cir. 2002).  Once these determinations are made, the court must

16  issue an order compelling arbitration.  9 U.S.C. § 3; *see Houlihan v. Offerman & Co., Inc.,* 31

17  F.3d 692, 695 (8th Cir. 1994).  The FAA leaves no discretion on this point.  *Dean Witter*

18  *Reynolds v. Byrd,* 470 U.S. 213, 218 (1985); *Simula, Inc. v. AutoLiv, Inc.,* 175 F.3d 716, 719

19  (9th Cir. 1999).[4]

20          **1.    The Parties Have a Valid Written Arbitration Agreement.**

21          The existence of an arbitration agreement here cannot be reasonably disputed.

22  Plaintiffs explicitly acknowledged in their signed account applications that they would be bound

23  by the dispute resolution terms of the bank's account agreement, which they acknowledged

24  requires all disputes between the parties to be decided "in an arbitration proceeding and not by a

---

[4]    Determinations on whether any prerequisites to arbitration have been met (such as time limits, notice, laches, estoppel, or other conditions precedent), or on whether any defenses to arbitrability exist (such as waiver or delay) are for the arbitrator to decide.  *Howsam v. Dean Witter Reynolds, Inc.,* 537 U.S. 79, 85 (2002).  The court need only determine whether the parties agreed to and are bound by a valid arbitration clause.  *Id.* at 84.

1 jury trial or a trial before a judge." *E.g.*, TX 6.  This language appeared in bold-face on their
2 account applications, and the specifics of the dispute resolution program were laid out in clear
3 language in the Consumer Account Agreement that each plaintiff confirmed she or he had
4 received.

5 Nor is the validity of this arbitration agreement open to question under the laws
6 of Colorado and Texas.  As the plaintiffs have acknowledged, there is a split of authority among
7 the laws of various states as to whether an arbitration agreement that (like the one here) includes
8 a class action waiver will be enforced.  Opp. to Motion to Dismiss (Dkt. No. 25) at 11 n. 4.  As
9 the plaintiffs have also acknowledged, however, Texas and Colorado are two states that
10 routinely enforce such agreements.  *Id.*

11 In Texas, the FAA is treated as part of the substantive law of the state.  *Capital*
12 *Income Props.-LXXX v. Blackmon,* 843 S.W.2d 22, 23 (Tex. 1992).  As a Texas appellate court
13 has noted, one of the purposes of this statute (as interpreted and applied by the Texas courts) is
14 "to ensure that private agreements to arbitrate are enforced according to their terms."
15 *AutoNation USA Corp. v. Leroy,* 105 S.W.3d 190, 200 (Tex. App. 2003).  That court therefore
16 enforced a class waiver in the arbitration provision of a consumer's contract, finding that the
17 clause was neither "substantively unconscionable" nor "fundamentally unfair."  *Id.* at 199.  The
18 court rejected the plaintiff's argument that her right to bring suit on a class basis "supersedes a
19 contracting party's right to arbitrate under the FAA."  *Id.* at 200.

20 Arbitration agreements are similarly enforced in Colorado.  *See, e.g., Bonanno v.*
21 *Quizno's Franchise Co., LLC.,* 2009 WL 1068744, at *23 (D. Colo. Apr. 20, 2009).  As one
22 federal judge in Colorado has noted, Colorado courts routinely recognize the enforceability of
23 arbitration agreements such as the one at issue here, noting that prohibitions on class arbitration
24 "are a common feature of consumer arbitration agreements, and numerous courts have
25 recognized that they are valid and fully enforceable."[5]

26 ---
27 [5] *Ornelas v. Sonic-Denver T, Inc.*, 2007 WL 274738, at * 5 (D. Colo. Jan. 29, 2007)
(citing as examples *Edwards v. Blockbuster Inc.*, 400 F. Supp. 2d 1305, 1309 (E.D. Okl. 2005);
28 *Jenkins v. First Am. Cash Advance of Ga. LLC*, 400 F.3d 868, 877-78, (11th Cir. 2005), *cert.*
(continued…)

As this Court has observed, each state is entitled to make its own balancing of interests in determining whether an arbitration provision of this kind should be enforced. *See* Order re Defendant's Motion to Dismiss for Improper Venue (Dkt. No. 44) at 6 (April 17, 2009).[6] Oregon and New Mexico – the states of residence of the two remaining plaintiffs – have struck the balance in the other direction, and such provisions are not currently enforceable under the laws of those states. Respecting authority to this effect from the Ninth Circuit and the Supreme Court of New Mexico that is binding on this Court, Wells Fargo does not seek to compel arbitration of the claims of those two plaintiffs.[7] However, with respect to the three plaintiffs whose claims are addressed in this Motion, the arbitration clause is clearly enforceable.

### 2. The Dispute Between the Parties Falls Within the Scope of the Arbitration Agreement.

"[W]here the contract contains an arbitration clause, there is a presumption of arbitrability in the sense that '[an] order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" *AT&T Techs., Inc.,* 475 U.S. at 650; *see Comedy Club, Inc. v. Improv W. Assocs.,* 553 F.3d 1277, 1284 (9th Cir. 2009); *Simula, Inc.,* 175

---

*denied,* 546 U.S. 1214 (2006); *Iberia Credit Bureau, Inc. v. Cingular Wireless LLC*, 379 F.3d 159, 175-76 (5th Cir. 2004); *Carter v. Countrywide Credit Indus. Inc.*, 362 F.3d 294, 301 (5th Cir. 2004); *Livington v. Assocs. Fin., Inc.*, 339 F.3d 553, 559 (7th Cir. 2003); *Snowden v. CheckPoint Check Cashing*, 290 F.3d 631, 638 (4th Cir. 2002), *cert. denied*, 537 U.S. 1087 (2002); *Johnson v. W. Suburban Bank,* 225 F.3d 366, 378 (3rd Cir. 2000), *cert. denied sub nom. Johnson v. Tele-Cash, Inc.*, 531 U.S. 1145 (2001)).

[6] This principle is recognized in the state courts of California, which have made clear that the hostility of California law to class action waivers in the consumer context must give way where the contrary law of another state governs. *See, e.g., Discover Bank v. Super. Ct.,* 134 Cal. App. 4th 886, 895 (2006) (enforcing class action waiver in consumer contract governed by the laws of Delaware).

[7] *See Chalk v. T-Mobile USA, Inc.,* 560 F.3d 1087, 1098 (9th Cir. 2009) (following *Vasquez-Lopez v. Beneficial Oregon, Inc.,* 152 P.2d 940, 953 (Or. Ct. App. 2007), in finding a class action waiver unenforceable under Oregon law); *Fiser v. Dell Computer Corp.,* 188 P.3d 1215, 1221 (N.M. 2008). Wells Fargo reserves the right to move to compel arbitration as to these plaintiffs if there is a future change in the interpretation of the law in those states. Wells Fargo also reserves the right to rely on the arbitration agreement in opposing any effort by these (or any other) plaintiffs to represent a class that includes persons whose claims are arbitrable.

1    F.3d at 719.  The burden of rebutting this presumption rests upon the party seeking to avoid

2    arbitration.  *Inlandboatmens Union of the Pac. v. Dutra Group,* 279 F.3d 1075, 1079 (9th Cir.

3    2002).  Absent unmistakably clear language to the contrary, arbitration should be ordered unless

4    it can be said that the arbitration clause at issue is not susceptible of an interpretation that covers

5    the asserted dispute.  *Moses*, 460 U.S. at 24-25.  Given the presumption in favor of arbitrability,

6    "only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail."

7    *AT&T Techs.*, 475 U.S. at 650.

8            Here, the arbitration agreement between the parties is a broad one, applying to

9    "any unresolved disagreement" between the plaintiffs and Wells Fargo "arising out of or

10   relating in any way" to the plaintiffs' checking accounts.  TX 1 at 9.  The use of such language

11   is deemed to mean that the parties "intend[ed] the clause to reach all aspects of the relationship."

12   *Schoenduve Corp. v. Lucent Techs., Inc.,* 442 F.3d 727, 732 (9th Cir. 2006) (quoting *Valentine*

13   *Sugars, Inc. v. Donau Corp.,* 981 F.2d 210, 213 n.2. (5th Cir. 1993)); *see Simula, Inc.,* 175 F.3d

14   at 720-721 (arbitration clause requiring arbitration of "all disputes arising in connection with"

15   an agreement was broad enough to reach "every dispute between the parties having a significant

16   relationship to the contract").  When a broad arbitration clause is at issue, "the presumption of

17   arbitration is 'particularly potent.'"  *Inlandboatmens Union,* 279 F.3d at 1079 (quoting *Dennis*

18   *L. Christensen Gen. Bldg. Contractor v. Southern Cal. Conference of Carpenters,* 952 F.2d

19   1073, 1077 (9th Cir. 1991)).

20           It is clear that plaintiffs' claims here are within the scope of the arbitration

21   agreement.  All aspects of this dispute arise from plaintiffs' underlying challenge to the

22   practices and procedures by which Wells Fargo assesses overdraft fees to its customers'

23   checking accounts.  Therefore, the entirety of this action falls within the scope of the arbitration

24   agreement, which applies to all disputes that relate "in any way" to plaintiffs' checking

25   accounts.

26

27

28

### 3. Plaintiffs Cannot Avoid Arbitration Through Reliance on California Law.

It is possible that plaintiffs may seek to avoid their written agreement to arbitrate by arguing that their claims are subject to California law rather than the laws of their home states. Such an argument cannot defeat arbitration here.

In opposing Wells Fargo's motions to dismiss their prior complaints on grounds of improper venue, plaintiffs argued that – notwithstanding the clearly contrary provision of the Consumer Account Agreement – their claims are governed by California law because some or all of their claims are governed by the choice of law provisions of Wells Fargo's Online Access Agreement and/or the General Terms of Use of Wells Fargo's website. Wells Fargo assumes that plaintiffs will repeat this argument in opposing Wells Fargo's Motion to Dismiss the Second Amended Complaint (and a more detailed discussion of the issue is set out in that Motion). If the Court rejects plaintiffs' argument on this point (as it should) in ruling on the Motion to Dismiss, that argument should be similarly rejected as to the arbitration issue. However, even if the Court accepts plaintiffs' argument, in whole or in part, as to the law that may apply on the merits of certain of their claims, it would not follow that they may wholly escape the arbitration agreement.

Even if the Court were to determine that the *some* of plaintiffs' claims were governed by California law, any claims that remained subject to the laws of plaintiffs' home states (as provided in the Consumer Account Agreement) would still be subject to compulsory arbitration. For example, if the Court found that a particular overdraft fee challenged by a plaintiff resulted from a transaction that was associated in some way with that plaintiff's use of online services – and if the Court then accepted (as it should not) the logical leap that all claims relating to that transaction were therefore subject to the choice of law provisions in the Online Access Agreement and/or General Terms of Use – it would still not follow that *all* of that plaintiff's claims would be governed by those agreements or by California law. Claims relating to transactions that had no conceivable connection to online services – the overwhelming majority of all the transactions at issue – could not possibly be subject to any choice of law

MOTION TO COMPEL ARBITRATION AND TO STAY PROCEEDINGS  
Civil Case No.: C 08-05739-WHA

11

1  provision other than that found in the Consumer Account Agreement.  Such claims would
2  remain subject to the laws of the plaintiffs' home states and would therefore be arbitrable.
3          Given the FAA's strong presumption of arbitrability, each plaintiff carries a
4  heavy burden of proof in showing that a given claim is not arbitrable for this (or any other)
5  reason.  *See AT&T Techs., Inc.,* 475 U.S. at 650; *Comedy Club, Inc.,* 553 F.3d at 1284.  And to
6  escape arbitration altogether – even under their own choice of law theory – plaintiffs would
7  have to carry the burden of demonstrating the non-arbitrability, not just of some of their claims,
8  but of *all* of them.  This burden is not met by the allegations of the SAC; nor is it otherwise
9  supported in the record.  *See, e.g.*, TX 16 at 56-57 (admission by plaintiff Ketterhagen that his
10  challenged transactions not associated in any way with use of online services).  In this situation,
11  the appropriate course under the FAA is to compel arbitration, stay the remainder of the action,
12  and deal with any remaining issues after the arbitration has been completed.  *See Mediterranean*
13  *Enters., Inc. v. Ssangyong Corp.,* 708 F.2d 1458, 1465 (9th Cir. 1983); *Levya v. Certified*
14  *Grocers of Cal. Ltd.,* 593 F.2d 857, 863-64 (9th Cir. 1979).
15         **C.**       **The Non-Arbitrable Claims in This Litigation Must Be Stayed.**
16          Once a court determines that a dispute falls within the scope of a valid written
17  arbitration agreement, Section 3 of the FAA requires that "on application of one of the parties"
18  the trial of the arbitrable claim must be stayed "until such arbitration has been had in accordance
19  with the terms of the agreement."  9 U.S.C. § 3.  If a court is satisfied that the parties have
20  agreed in writing to arbitrate an issue, the FAA leaves the court no discretion in this matter.
21  *McMahan Sec. Co. L.P. v. Forum Capital Mkts. L.P.,* 35 F.3d 82, 85-86 (2d. Cir. 1994).
22          Moreover, particularly where, as here, there is substantial overlap between the
23  arbitrable and non-arbitrable claims, it is appropriate to stay the *entire* action, and not simply the
24  specific claims that are found to be arbitrable.  *See Moses,* 460 U.S. at 21 n. 23; *see also*
25  *Mediterranean Enters., Inc.,* 708 F.2d at 1465 (affirming such a stay as "proper in all respects");
26  *Roderick v. Mazzetti & Assocs., Inc.,* 2004 WL 2554453, at *12 (N.D. Cal. Nov. 9, 2004)
27  (granting stay of both arbitrable and non-arbitrable claims).
28

1   Wells Fargo therefore requests that the Court stay this litigation in its entirety pending the arbitration of the arbitrable claims of Kristy and Terry Dagenhart and William Ketterhagen.

**IV.   CONCLUSION**

For the foregoing reasons, Wells Fargo requests that any ruling on this Motion be deferred until after the MDL transfer proceedings have been completed with respect to this action. If and when the Court considers this Motion on the merits, Wells Fargo requests that the Court compel arbitration of the claims of plaintiffs Kristy Dagenhart, Terry Dagenhart, and William Ketterhagen and stay the remaining proceedings in this action until the arbitrable issues have been resolved.

DATED: August 6, 2009

Respectfully submitted,

COVINGTON & BURLING LLP

By:   /s/ Sonya D. Winner
Sonya D. Winner
Attorneys for Defendant
WELLS FARGO BANK, N.A.