Reed R. Kathrein (139304)
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Ave., Suite 202
Berkeley, California 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
jefff@hbsslaw.com

Steve W. Berman (*pro hac vice*)
Ari Y. Brown (*pro hac vice*)
Genessa Stout
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Fifth Avenue, Suite 2900
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com
ari@hbsslaw.com
genessa@hbsslaw.com

Counsel for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| DONNA MCMILLAN, TERRY DAGENHART and KRISTY DAGENHART as husband and wife, WILLIAM KETTERHAGEN, DOLORES GUTIERREZ, MARC MARTINEZ, Individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>WELLS FARGO BANK, N.A.<br><br>Defendants. | No. 08-cv-05739 WHA<br><br>**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO MOTION TO COMPEL ARBITRATION**<br><br><br>Date: September 10, 2009<br>Time: 8:00 a.m.<br>Dept.: Courtroom 9<br>Honorable William H. Alsup |

1

**TABLE OF CONTENTS**

2

**Page**

3  I.   INTRODUCTION ................................................................................................1

4  II.  STATEMENT OF FACTS ...................................................................................1

5          1.   Wells Fargo's Signature Card Agreement (Consumer Account
                 Application)......................................................................................1

6          2.   Wells Fargo's Consumer Account Agreement...................................2

7

8          3.   The AAA has stopped arbitrating consumer finance disputes pending
                 inquiry into concerns regarding fairness and conflicts of interest...................4

9  III. ARGUMENT .......................................................................................................5

10         A.   Arbitration Under the Applicable Agreement Does not Require use
                 of the AAA nor Does it Prohibit Class Actions ...........................................5

11

12         B.   The Arbitration Provision in the CAA is Unenforceable ............................6

13         1.   Courts Increasingly Void Arbitration Clauses with Class
                 Action Waivers...................................................................................7

14         2.   The Arbitration Clause in Wells Fargo's CAA is Unconscionable.................8

15              a.   Wells Fargo's CAA was imposed in a Procedurally
                     Unconscionable Manner.........................................................9

16

17              b.   Wells Fargo's Arbitration Clause is Substantively
                     Unconscionable ....................................................................10

18         C.   The AAA's Moratorium on Consumer Financial Services Arbitrations
                 Renders This Motion Moot ......................................................................12

19

20         D.   The Court Should Not Defer Ruling Pending the Question of Transfer
                 to the MDL ...............................................................................................13

21 IV.  CONCLUSION .................................................................................................13

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

## CASES

**Page**

*In re Am. Express Merchants' Litig.*,
  554 F.3d 300 (2d Cir. 2009) ...................................................................... 7

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997) ................................................................................... 7

*Armendariz v. Found. Health Psychcare Servs., Inc.*,
  24 Cal. 4th 83 (2000) .............................................................................. 8, 9

*Bauchman v. West High Sch.*,
  132 F.3d 542 (10th Cir. 1997) ................................................................ 12

*Blackmon v. Hale*,
  1 Cal. 3d 548 (1970) ................................................................................. 5

*Bonanno v. Quizno's Franchise Co., LLC*,
  2009 WL 1068744 (D. Colo. Apr. 20, 2009) ......................................... 10

*Bullis v. Security Pac. Nat'l Bank*,
  21 Cal. 3d 801 (1978) ............................................................................... 5

*Canadian Overseas Ores, Ltd. v. Compania de Acero del Pacifico S.A.*,
  528 F. Supp. 1337 (S.D.N.Y. 1982) ........................................................ 13

*Carnegie v. Household Int'l, Inc.*,
  376 F.3d 656 (7th Cir. 2004) .................................................................... 7

*Circuit City Stores, Inc. v. Adams*,
  279 F.3d 889 (9th Cir. 2002) .................................................................... 9

*Coady v. Cross Country Bank, Inc.*,
  729 N.W.2d 732 (Wisc. Ct. App. 2007) ................................................... 8

*Da-Green Elecs., Ltd. v. Bank of Yorba Linda*,
  891 F.2d 1396 (9th Cir. 1989) .................................................................. 5

*Discover Bank v. Super. Ct.*,
  36 Cal. 4th 148 (2005) .............................................................................. 8

*Doctor's Assocs., Inc. v. Casarotto*,
  517 U.S. 681 (1996) ................................................................................. 6

*Eagle v. Fred Martin Motor Co.*,
  809 N.E.2d 1161 (Ohio Ct. App. 2004) ................................................... 8

*Feeney v. Dell Inc.*,
  908 N.E.2d 753 (Mass. 2009) ................................................................... 8

*Kinkel v. Cingular Wireless, LLC,*
    857 N.E.2d 250 (Ill. 2006) ................................................................................................. 8

*Kortum-Managhan v. Herbergers NBGL,*
    204 P.3d 693 (Mont. 2009) ............................................................................................ 8, 9

*Kristian v. Comcast Corp.,*
    446 F.3d 25 (1st Cir. 2006) ................................................................................................ 7

*Leonard v. Terminix Int'l Co. L.P.,*
    854 So. 2d 529 (Ala. 2002) ................................................................................................ 7

*Little v. Auto Stiegler, Inc.,*
    29 Cal. 4th 1064 (2003) ................................................................................................... 10

*Lowden v. T-Mobile USA, Inc.,*
    512 F.3d 1213 (9th Cir. 2008) ........................................................................................... 7

*Luna v. Household Fin. Corp. III,*
    236 F. Supp. 2d 1166 (W.D. Wash. 2002) ...................................................................... 10

*McKee v. AT&T Corp.,*
    191 P.3d 845 (Wash. 2008) ............................................................................................... 8

*Moran v. Ceiling Fans Direct, Inc.,*
    239 Fed. Appx. 931 (5th Cir. Tex. 2007) ........................................................................ 11

*Muhammad v. County Bank of Rehoboth Beach, Del.,*
    912 A.2d 88 (N.J. 2006) .................................................................................................... 8

*Nagrampa v. MailCoups, Inc.,*
    469 F.3d 1257 (9th Cir. 2006) ........................................................................................ 8, 9

*Player v. Geo. M. Brewster & Son, Inc.,*
    18 Cal. App. 3d 526 (1971) ............................................................................................... 8

*Powertel, Inc. v. Bexley,*
    743 So. 2d 570 (Fla. Dist. Ct. App. 1999) ........................................................................ 8

*Scott v. Cingular Wireless,*
    161 P.3d 1000 (Wash. 2007) ........................................................................................... 10

*Shankle v. B-G Maint. Mgmt. of Colorado, Inc.,*
    163 F.3d 1230 (10th Cir. 1999) .................................................................................. 11, 13

*Shroyer v. New Cingular Wireless Servs., Inc.,*
    498 F.3d 976 (9th Cir. 2007) ............................................................................................. 7

*State ex rel. Dunlap v. Berger,*
    567 S.E.2d 265 (W. Va. 2002) ........................................................................................ 13

*Szetela v. Discover Bank,*
    97 Cal. App. 4th 1094 (2002) ............................................................................................ 8

PLAINTIFFS' RESPONSE TO MOTION TO COMPEL
ARBITRATION

010080-12 322707 V1

*Thibodeau v. Comcast Corp.*,
    912 A.2d 874 (Pa. Super. Ct. 2006) ............................................................. 8, 11

*Tillman v. Commercial Credit Loans, Inc.*,
    655 S.E.2d 362 (N.C. 2008) ....................................................................... 10

*Vasquez-Lopez v. Beneficial Or., Inc.*,
    152 P.3d 940 (Or. Ct. App. 2007) ............................................................. 8, 9

*Woods v. QC Fin. Servs., Inc.*,
    280 S.W.3d 90 (Mo. Ct. App. 2008) ........................................................... 8

*Zamora v. Swift Transp. Corp.*,
    2008 U.S. Dist. LEXIS 49990 (W.D. Tex. June 3, 2008) ............................... 11

**STATUTES**

9 U.S.C. § 2 ....................................................................................................... 6

1

**STATEMENT OF ISSUES**

2      1.     Should the Court enforce the signed Signature Card Agreement (Consumer Account

3  Application) according to its terms and refer this case to arbitration in which Plaintiffs are free to

4  pursue class wide claims before an appropriate neutral party?  *See infra* at 5-6.

5      2.     Is the arbitration clause in Wells Fargo's Consumer Account Agreement

6  procedurally and substantively unconscionable when it was not negotiated and would effectively

7  exculpate Wells Fargo from any liability?  *See infra* at 6-12.

8      3.     Should the Court invalidate Wells Fargo's requirement that arbitration proceed

9  before the AAA solely on an individual basis when the propriety of this forum has been called into

10  question and is under investigation for conflicts of interest?  *See infra* at 12-13.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## I. INTRODUCTION

Defendant's motion to Compel Arbitration and Stay Proceedings should be denied for several reasons. First the terms of the arbitration Wells Fargo asks the Court to enforce improperly limit the arbitration to which the Plaintiffs agreed in the agreements they actually signed. Second, the document containing the arbitration provision is procedurally unconscionable, while the class action waiver is substantively unconscionable and unenforceable. Finally, the arbitration firm specified by Wells Fargo Bank N.A. ("Wells Fargo"), the American Arbitration Association ("AAA") recently announced that it has stopped arbitrating disputes like this one in response to an investigation by the Minnesota Attorney General into conflicts of interest and other violations of its purported neutrality.

However, referring this case to arbitration before a truly neutral party wherein Plaintiffs have the right to pursue claims as a class action would enforce the terms of the agreement the Plaintiffs actually signed. This would truly further the interests of judicial economy and can be done without delay.

## II. STATEMENT OF FACTS

Wells Fargo moves to compel based on its Consumer Account Application (or "Signature Card Agreement") (TX 2-10), which it claims incorporates its Consumer Account Agreement ("CAA") (TX 1). As detailed in Plaintiffs' Response to Defendant's Motion to Dismiss for Improper Venue,[1] the testimony and evidence garnered through discovery show that each Plaintiff was presented with, and signed a copy of the Signature Card Agreement at the time they opened their respective accounts, and that each signed before receiving any other materials. Each Plaintiff testified that they did not receive Wells Fargo's CAA at all on the day they opened their respective accounts. Wells Fargo has put forward no direct evidence to contradict these assertions.

### 1. Wells Fargo's Signature Card Agreement (Consumer Account Application)

The Signature Card Agreement constitutes the only agreement that bears a customer's signature and the only agreement about which there appears to be no dispute regarding its

---

[1] Plaintiffs hereby incorporate the factual statements and evidence submitted in their Response to Defendant's Motion to Dismiss.

applicability.  While commonly referred to as a "Signature Card," this three-page agreement contains substantive terms, warranties and notices.  The document states that, at the time of signing, the customer has received a copy of the "applicable" account agreement.  This Signature Card Agreement is not attached to any other document, nor does it specify which document constitutes the applicable agreement.  The document states:

> I have received a copy of the applicable account agreement and privacy brochure and agree to be bound by them, including the terms of the Direct Deposit Advance Service® and Deposit Advance[SM] Service (Deposit Advance Service not available in all states) described in the account agreement and Service Agreement and Product Guide.  I also agree to the terms of the dispute resolution program described in the account agreement Service Agreement and Product Guide.  Under this program our disputes will be decided before one or more neutral persons in an arbitration proceeding and not by a jury trial or a trial before a judge.

*See* TX 4, 5, 7-10; *see also* TX 2-3, 6.

The document does not purport to otherwise limit the forum or the venue in which a customer may bring a dispute.  Nor does this document purport to restrict customers from utilizing the class action mechanism to litigate disputes in arbitration.

Wells Fargo bankers affirmatively recall that their regular practice was to have the customer sign this agreement before giving them any other written materials.  *See* Depositions of Trevor Hurley (TX 20) at 145, Patricia Lopez (TX 22) at 73-75, Gene Cunningham (TX 18) at 69, 75-76.  Plaintiffs believed this document constituted the contract between them and Wells Fargo.  *See* Depositions of Kristy Dagenhart (TX 13) at 76-77, William Ketterhagen (TX 16) at 69-70.

## 2.    Wells Fargo's Consumer Account Agreement

Wells Fargo seeks to enforce the arbitration provision in its self-styled "Consumer Account Agreement."  The CAA Arbitration Clause states that any arbitration must be administered by the American Arbitration Association ("AAA"), shifts the burden of costs and attorney's fees to the party that does not move to compel arbitration, and categorically prohibits the use of any class or representative action:

> **Binding Arbitration**. … Either you or the Bank may require the submission of a dispute to binding arbitration at any reasonable time notwithstanding that a lawsuit or other proceeding has been commenced.  If either you or the Bank fails to submit to binding arbitration following a lawful demand, the one who fails to so submit

bears all costs and expenses (including attorney's fees and expenses) incurred by the other compelling arbitration.

**Neither you nor the Bank shall be entitled to join or consolidate disputes by or against others in any arbitration, or to include in any arbitration any dispute as a representative or member of a class, or to act in any arbitration in the interest of the general public or in a private attorney general capacity.**

Each arbitration, including the selection of the arbitrator shall be administered by the American Arbitration Association ....

*Id.* at 8-9 (emphasis in original).

Wells Fargo moves to compel arbitration only as to those Plaintiffs residing in Texas and Colorado – states that it believes will uphold its class action ban. Wells Fargo has not moved to arbitrate claims brought by Ms. Gutierrez or Mr. Martinez who respectively reside in Oregon and New Mexico.

No named Plaintiff received a copy of this purported agreement anytime before opening their account. *See* SAC ¶¶ 43, 52, 68, 79, 89. Each Plaintiff's testimony under cross examination supports their respective allegations. *See* Depositions of Kristy Dagenhart (TX 13) at 21:9-19, 35:5-19; Terry Dagenhart (TX 14) at 20; William Ketterhagen (TX 16) at 19-20; Dolores Gutierrez (TX 15) at 37:9-20, Marc Martinez (TX 17) at 28:7-29:3.

Wells Fargo put forward no direct evidence to contradict these assertions. As detailed in Plaintiffs' Response to Defendant's Motion to Dismiss, no witness could recall actually providing a copy of the CAA to any of the Plaintiffs. The only evidence Wells Fargo offers to dispute Plaintiffs' specific statements that they did not receive copies of the CAA are portions of a procedure protocol, and statements from bankers that their general practice was to follow protocol and to provide customers with a "new account kit." But when questioned, some bankers did not even use this protocol, at least one did not know what was included in this new account kit, while others conceded that they did not actually follow the steps in Wells Fargo's written protocol. *See* Cunningham Dep. (TX 18) at 72-74; Hurley Dep. (TX 20) at 91-113. At least three bankers acknowledged that their practice was to provide the new account kit only after the customer had signed the Signature Card Agreement. Hurley Dep. (TX 20) at 145; Lopez Dep. (TX 22) at 73-75, Cunningham Dep. (TX 18) at 69, 75-76. *See* Response to Motion to Dismiss at 7.

PLAINTIFFS' RESPONSE TO MOTION TO COMPEL ARBITRATION

-3-

010080-12 322707 V1

1   Wells Fargo's claim that all customers are provided a copy of the CAA is contradicted by

2   objective evidence.  One banker testified that her branch opens at least 40 new accounts during a

3   slow week.  Wells Fargo's records show that 100 copies of the applicable version of the CAA

4   lasted this branch nearly three months during 2007, and 150 copies lasted the branch six months

5   between October 2005 and April 2006.  *See* Response to Motion to Dismiss at 11 (citing Lopez

6   Dep. (TX 22) at 23-25, TX 51).  This is consistent with the declaration previously submitted by a

7   former Wells Fargo banker who testified that a batch of 50 consumer account agreements would

8   last a branch several months – even though the branch was opening between 190 and 360 new

9   accounts each month.  Declaration of Melissa Lopez (TX 52) at ¶¶ 5-6.

10   Wells Fargo's claim that bankers always provide customers with a copy of the CAA is also

11   disputed by an audio recording that captures an account opening process from start to finish.  At

12   the close of the process, the customer asked whether there is an account package he should receive.

13   The banker informs him that this is not necessary.  *See* Declaration of Alex Zankich (TX 53).[2]

14      **3.   The AAA has stopped arbitrating consumer finance disputes pending inquiry
            into concerns regarding fairness and conflicts of interest**

15
     On July 21, 2009, the AAA announced it is no longer accepting new debt collection

16   disputes after another arbitration firm, the National Arbitration forum ("NAF"), agreed in a consent

17   decree to stop all arbitrations of consumer cases.  *See* TX 54.  The Minnesota Attorney General

18   sued the NAF a week earlier alleging the NAF is not a neutral body but has extensive financial and

19   organizational ties to banks and other creditors.  The suit against the NAF alleged conflicts of

20   interest, violations of the state consumer fraud act, and detailed extensive violations of its duties as

21   a neutral.  The Minnesota Attorney General also sent a strongly worded letter to the AAA

22   indicating that the problems uncovered in its investigation were not limited to the NAF:

23
         [T]he arbitration process is fundamentally unfair for holding corporations
24       responsible for any wrongdoing.  In some cases, consumers forfeited
         important rights in the fine print of contracts they had never seen.
25       Consumers who we interviewed in the NAF investigation were told that,
         when they initiated a claim against the corporation, the claim could be
26       delayed for up to one year before there was any review of the matter.

27   ────────────────
       [2] A copy of this recording was provided to defense counsel on an audio cassette on May 6,
28   2009.  Another digital copy of the actual recording can be made available to the Court.

> There are many other defects in the process. The fundamental problem with consumer arbitrations under "fine print" contracts is that the arbitration company draws its income from the dominant participant – namely the credit card company, telecommunications company, the hospital, etc. – and personnel have a financial incentive to make sure that the corporation is pleased with the outcome. Otherwise, the corporation will undoubtedly look to other arbitration administrators. As noted above, this "repeat player" bias does not occur in court, since judges rely on taxpayers – not litigants – for their income.

TX 55.

Soon after receiving this letter, the AAA announced its own moratorium, which prevents the AAA from hearing this dispute. *See* TX 56. In a press release issued on July 27, 2009, the AAA conceded there are "weaknesses" in its consumer arbitration process and stated that it "is calling for reform that will address such weaknesses." TX 57. Among other things, the AAA moratorium applies to any disputes initiated by businesses, in which the customer has not agreed to arbitrate at the time of the dispute and the case "involves a consumer finance matter." *Id.*

### III.   ARGUMENT

**A.    Arbitration Under the Applicable Agreement Does not Require use of the AAA nor Does it Prohibit Class Actions**

Wells Fargo argues that the parties have a valid, written arbitration agreement based on the Signature Card Agreement that Plaintiffs signed. *See* Mtn to Compel Arbitration at 7-8 (citing TX 6). This agreement however, does not dictate arbitration before the AAA, nor does it prohibit class-wide arbitration. This Signature Card Agreement describes the arbitration to which the parties agreed by stating: "Under this program our disputes will be decided before one or more neutral persons in an arbitration proceeding and not by a jury trial or a trial before a judge." TX 2-10. Plaintiffs therefore agreed to arbitration, before a neutral party, in which they can pursue their claims as a class action. They did not agree to more.

An executed Signature Card establishes a contract between the depositor and the bank. *See e.g., Da-Green Elecs., Ltd. v. Bank of Yorba Linda*, 891 F.2d 1396, 1399 n.1 (9th Cir. 1989) ("[a] Signature Card … serves as a contract between the bank and the depositor for the handling of the account"); *Blackmon v. Hale*, 1 Cal. 3d 548, 556 (1970); *Bullis v. Security Pac. Nat'l Bank*, 21 Cal. 3d 801, 812 (1978).

1    Here, each Plaintiff signed the Signature Card Agreement before receiving, or even

2  knowing of any other document.  The document states:  "I have received a copy of the applicable

3  account agreement."  TX 2-10.  The Signature Card is not attached to a more detailed account

4  agreement, nor does it specifically reference the Consumer Account Agreement – referring only to

5  the "applicable agreement."  Wells Fargo's bankers confirmed that they had the borrowers sign this

6  document before they even claim to have provided or even shown a copy of the Consumer Account

7  Agreement.  *See* Cunningham Dep. (TX 18) at 68:7-69:7; Hurley Dep. (TX 20) at 145; Lopez Dep.

8  (TX 22) at 73-75.  Kristy Dagenhart testified that her understanding of the arbitration provision

9  stated on the agreement she signed means that "any dispute would be handled by a third party or

10  somebody that's not biased."  TX 13 at 81; 74-85.  This understanding is consistent with the

11  language on the Signature Card Agreement, which is the only "applicable account agreement" the

12  customer received at the time the customer agrees to be bound by the terms of documents she

13  "received."

14    As shown in Plaintiffs' Response to Defendant's Motion to Dismiss, Wells Fargo cannot

15  impose additional terms, such as its class action ban or its requirement that arbitration be

16  administered by the AAA.  Such terms conflict with the terms of the signed agreement and are

17  therefore void.  If the Court is to compel arbitration, it must be in a manner consistent with the

18  Signature Card Agreement – specifically, Plaintiffs must have the opportunity to litigate their

19  claims as a class action and cannot be obligated to use AAA.

20  **B.     The Arbitration Provision in the CAA is Unenforceable**

21    In the event the Court decides to analyze the mandatory arbitration provision and class

22  action waiver in Wells Fargo's CAA, the Court should find those provisions void.  Under the FAA,

23  an arbitration clause may be struck down "upon such grounds as exist at law or in equity for the

24  revocation of any contract."  9 U.S.C. § 2.  The Court may decline to enforce Wells Fargo's

25  arbitration clause based on "generally applicable contract defenses, such as fraud, duress, or

26  unconscionability."  *Doctor's Assocs., Inc. v. Casarotto,* 517 U.S. 681, 687 (1996).  Unlike the

27  provision in the Signature Card Agreement, the arbitration provision in the CAA is procedurally

28  and substantively unconscionable.  Arbitration provisions with similar effects have been held

PLAINTIFFS' RESPONSE TO MOTION TO COMPEL
ARBITRATION                                                  -6-

invalid under federal law, California law, and the laws of an ever increasing number of states –
including Colorado and Texas.

### 1.     Courts Increasingly Void Arbitration Clauses with Class Action Waivers

Wells Fargo insists that provisions in its CAA require this dispute to be resolved through
binding arbitration on a non-class basis.  The entire motion is predicated on the false assumption
that arbitration provisions in the CAA are enforceable.  They are not.  The arbitration provision that
prohibits class actions blocks adjudication by a court trustworthy as neutral, and undermines "[t]he
policy at the very core of the class action mechanism ... to overcome the problem that small
recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or
her rights."  *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 617 (1997).

Federal appellate courts have made clear that provisions like these should not be enforced
in consumer fraud and antitrust cases, where there are a large number of class members but
recovery to each would be too small to justify individual actions.  In *Kristian v. Comcast Corp.,*
446 F.3d 25 (1st Cir. 2006), the court refused to enforce a class action waiver provision imposed on
consumers by cable TV providers on a take-it-or-leave-it basis.  *Id.* at 61 & n.23 (finding that
enforcing a class action prohibition, would allow defendant to "be essentially shielded from private
consumer antitrust enforcement liability, even in cases where it has violated the law.").

Earlier this year, the Second Circuit applied federal law to invalidate an arbitration
provision with a class action waiver in a credit card agreement.  The court found that enforcing the
provisions would effectively grant the card issuer *de facto* immunity for alleged misconduct by
removing the plaintiffs' only feasible means of redress.  The court therefore held that the class
action waiver was invalid under the FAA.  *In re Am. Express Merchants' Litig.,* 554 F.3d 300, 320
(2d Cir. 2009); *see also Carnegie v. Household Int'l, Inc.,* 376 F.3d 656, 661 (7th Cir.  2004) ("The
realistic alternative to a class action is not 17 million individual suits, but zero individual suits, as
only a lunatic or a fanatic sues for $30.00."); *Shroyer v. New Cingular Wireless Servs., Inc.,* 498
F.3d 976, 982-84 (9th Cir. 2007); *Lowden v. T-Mobile USA, Inc.*, 512 F.3d 1213 (9th Cir. 2008).

State courts are increasingly in accord.  *See Leonard v. Terminix Int'l Co. L.P.,* 854 So. 2d
529, 538 (Ala. 2002) (class action waiver, with limitation of damages clause in adhesive arbitration

contract, deprived consumers of a "meaningful remedy" and was unconscionable); *Feeney v. Dell Inc.,* 908 N.E.2d 753, 765 (Mass. 2009) (invalidating class action arbitration waiver because allowing corporations "to insulate themselves from small value consumer claims creates the potential for countless customers to be without an effective method to vindicate their statutory rights"); *Muhammad v. County Bank of Rehoboth Beach, Del.,* 912 A.2d 88, 101 (N.J. 2006) (noting that the public interest in a consumer's ability to effectively pursue statutory rights under consumer protection laws overrides the defendants' right to enforce the class-arbitration bar in their agreement); *Kinkel v. Cingular Wireless, LLC,* 857 N.E.2d 250, 274-75 (Ill. 2006) (same); *Discover Bank v. Super. Ct.,* 36 Cal. 4th 148, 161 (2005) (noting, "because a company which wrongfully exacts a dollar from each of millions of customers will reap a handsome profit, the class action is often the only effective way to halt and redress such exploitation").[3]

## 2.    The Arbitration Clause in Wells Fargo's CAA is Unconscionable

To be enforceable, an agreement to arbitrate must have been "openly and fairly entered into." *Player v. Geo. M. Brewster & Son, Inc.,* 18 Cal. App. 3d 526, 534 (1971). Any policy favoring arbitration "cannot displace the necessity for a voluntary agreement to arbitrate." *Id.* Unconscionability is a generally applicable contract defense that may render an arbitration provision unenforceable. *Nagrampa v. MailCoups, Inc.,* 469 F.3d 1257, 1280 (9th Cir. 2006) (citing *Doctor's Assocs., Inc. v. Casarotto,* 517 U.S. 681, 686-87 (1996)). Courts analyze contract provisions for both procedural and substantive unconscionability and will refuse to enforce arbitration provisions that are unconscionable. *Armendariz v. Found. Health Psychcare Servs., Inc.,* 24 Cal. 4th 83, 114 (2000). While both forms of unconscionability must be present, the more substantively oppressive the contract term, the less evidence of procedural unconscionability is

---

[3] *See also Eagle v. Fred Martin Motor Co.,* 809 N.E.2d 1161, 1180 (Ohio Ct. App. 2004); *Powertel, Inc. v. Bexley,* 743 So.2d 570, 576 (Fla. Dist. Ct. App. 1999); *Szetela v. Discover Bank,* 97 Cal. App. 4th 1094, 1101 (2002); *Coady v. Cross Country Bank, Inc.,* 729 N.W.2d 732, 746-47 (Wisc. Ct. App. 2007*); Thibodeau v. Comcast Corp.,* 912 A.2d 874, 885-86 (Pa. Super. Ct. 2006); *Woods v. QC Fin. Servs., Inc.,* 280 S.W.3d 90, 95-99 (Mo. Ct. App. 2008); *Kortum-Managhan v. Herbergers NBGL,* 204 P.3d 693, 701 (Mont. 2009); *Vasquez-Lopez v. Beneficial Or., Inc.,* 152 P.3d 940, 953 (Or. Ct. App. 2007); *McKee v. AT&T Corp.,* 191 P.3d 845, 860 (Wash. 2008).

1    required to conclude that the term is unenforceable, and vice versa. *Id.* (quoting 15 WILLISTON ON

2    CONTRACTS § 1763A, at 226-27 (3d ed. 1972)).

3                    **a.    Wells Fargo's CAA was imposed in a Procedurally Unconscionable Manner**

4        Procedural unconscionability focuses on "oppression" or "surprise." "Oppression arises

5    from an inequality of bargaining power that results in no real negotiation and an absence of

6    meaningful choice," while "[s]urprise involves the extent to which the supposedly agreed-upon

7    terms are hidden in a prolix printed form drafted by the party seeking to enforce them."

8    *Nagrampa*, 469 F.3d at 1280. A finding of a contract of adhesion essentially dictates a finding of

9    procedural unconscionability. *Circuit City Stores, Inc. v. Adams*, 279 F.3d 889, 893 (9th Cir.

10   2002).

11       Wells Fargo's CAA is, at best, a contract of adhesion that was presented on a take it or

12   leave it basis to a party with significantly less bargaining power. Plaintiffs had no opportunity to

13   review the CAA before they opened their respective accounts, if they ever received it at all. It was

14   not an open, voluntary and fairly entered into agreement. Even if Wells Fargo provided copies of

15   the CAA, the clauses that prohibit class actions and that waive access to courts and to a jury cannot

16   be considered to have been openly and fairly entered into. These provisions are buried in a 59-

17   page, densely worded document. Even if it were physically possible to read this document when

18   Plaintiffs were opening their accounts, the terms were not open to negotiation. A single consumer

19   stands in a unique power disadvantage when dealing with Wells Fargo, a powerful bank with a

20   legal team more than capable of defending its interests. There is nothing arms-length about this

21   relationship. *See Vasquez-Lopez v. Beneficial Or., Inc.,* 152 P.3d 940, 953 (Or. Ct. App. 2007)

22   ("significant disparity of bargaining power" between plaintiffs and defendant mortgage firm).

23       There has been no showing that Plaintiffs, or any Wells Fargo customer, had reasonable

24   opportunity to be informed of the meaning or import of the arbitration clause Wells Fargo seeks to

25   impose. Even personal bankers who opened the accounts for the Plaintiffs are unaware of the

26   meaning or consequences of the arbitration clause in the CAA. *See* Lopez Dep. (TX 22) at 65, 69;

27   Cunningham Dep. (TX 18) at 101. *See Kortum-Managhan v. Herbergers NBGL,* 204 P.3d 693,

28

699 (Mont. 2009) (for "fundamental constitutional rights to trial by jury [and] access to the courts ... to be effectively waived, a consumer must be informed of the consequences before personally consenting to the waiver; waiver of a fundamental right would not be lightly presumed.").

**b.** **Wells Fargo's Arbitration Clause is Substantively Unconscionable**

Substantive unconscionability analysis focuses on the fairness of the terms. An arbitration provision is substantively unconscionable if it is "overly harsh," generates "one-sided results," or does not have a "modicum of bilaterality." *Armendariz*, 24 Cal. 4th at 114; *see also Little v. Auto Stiegler, Inc*., 29 Cal. 4th 1064, 1071 (2003). "A clause that unilaterally and severely limits the remedies of only one side is substantively unconscionable ...." *Scott v. Cingular Wireless,* 161 P.3d 1000, 1008 (Wash. 2007); *see also Tillman v. Commercial Credit Loans, Inc.,* 655 S.E.2d 362, 373 (N.C. 2008) ("one-sidedness" of class arbitration bar makes it offensive to public policy).

Enforcing the CAA would be overly harsh as it would take away Plaintiffs' ability to litigate their relatively small claims while subjecting them to the risk of liability for Wells Fargo's own attorney's fees. The out-of-pocket costs of an individual arbitration alone would often exceed a single class member's damages.[4] The effect of this clause is not mutual. It is difficult to conceive of a situation in which Wells Fargo could maintain an action against its customers as a class action. Yet Wells Fargo preserves its own access to the courts in the context of foreclosure, setoff and repossession rights, or to obtain ancillary remedies such as attachment or garnishment. TX 1 at p. 10. As one court noted when evaluating a similar arbitration provision a bank imposed on its customers, the bank had effectively preserved its access to the courts in the context in which it was likely to bring claims, while forcing any claim a customer may assert into arbitration. *Luna v. Household Fin. Corp. III,* 236 F. Supp. 2d 1166, 1179 (W.D. Wash. 2002).

The holding in *Bonanno v. Quizno's Franchise Co., LLC,* 2009 WL 1068744 (D. Colo. Apr. 20, 2009), on which Wells Fargo relies, actually supports a finding of unconscionability under the facts of this case. *Bonann* distinguished *Kristian* and *American Express* (discussed *supra*)

---

[4] Under AAA rules, a consumer pays half the arbitrator's fee, up to $125, if the consumer's claim is less than $10,000. *See* TX 58. Plaintiffs were assessed several overdraft fees of $35 each. Accordingly, the cost of arbitrating their individual claims is disproportionate to and may even exceed their potential recovery, as it will for many class members.

PLAINTIFFS' RESPONSE TO MOTION TO COMPEL
ARBITRATION
-10-

010080-12  322707 V1

because the arbitration clause at issue did not prohibit class arbitration.  The court also found that the plaintiffs "stand to receive an average of $60,000 to $75,000 after trebling, *i.e.,* significantly more damages than either the *American Express* or the *Kristian* plaintiffs," such that individual litigation was not cost-prohibitive.  *Id.* at *15-16.  Such potential individual recovery is not at issue here in a case regarding repetitive $35 bank fees.

Even federal courts sitting in Colorado and Texas – the only states whose laws Wells Fargo invokes to enforce its arbitration provision, have refused to compel arbitration under facts similar to this case.  *See Zamora v. Swift Transp. Corp.*, 2008 U.S. Dist. LEXIS 49990 (W.D. Tex. June 3, 2008) (denying motion to compel arbitration upon finding there was no mutuality of obligation and thus no contract when the employer had the sole unilateral right to modify the arbitration program); *Moran v. Ceiling Fans Direct, Inc.*, 239 Fed. Appx. 931, 934 (5th Cir. Tex. 2007) (denying motion to compel arbitration based, in part, on customers' claim that they had not accepted the terms of the policy containing the arbitration clause); *Shankle v. B-G Maint. Mgmt. of Colorado, Inc.*, 163 F.3d 1230 (10th Cir. 1999) (affirming the Colorado district court's denial of defendant's motion to compel arbitration upon finding that arbitration was cost prohibitive).

Finally, as the Minnesotal Attorney General's investigation uncovered, arbitration proceedings involving repeat players like Wells Fargo are not necessarily, or even commonly, impartial.  The fact that Wells Fargo only seeks to arbitrate the claims of the Dagenharts and Mr. Ketterhagen and will not entertain the possibility of class-wide arbitration belies its purported commitment to arbitration.  Wells Fargo's true goal is not efficient adjudication, but preventing consumers from aggregating their claims in order to shield itself from liability for its intentional scheme to defraud them.  *See Thibodeau v. Comcast Corp.,* 912 A.2d 874, 885-86 (Pa. Super. Ct. 2006) ("Should the law require consumers to litigate or arbitrate individually, defendant corporations are effectively immunized from redress of grievances.").

Wells Fargo's class action waiver would effectively exempt it from responsibility for its own fraud by preventing consumers from obtaining redress for a scheme to deliberately cheat large numbers of consumers out of individually small sums of money.  This was forced on customers as a contract of adhesion and, if it was provided at all, was done so in a way that ensured that no

PLAINTIFFS' RESPONSE TO MOTION TO COMPEL ARBITRATION

-11-

customer could reasonably be expected to know its terms or effect.  The arbitration provision in the CAA is therefore procedurally and substantively unconscionable.

## C.     The AAA's Moratorium on Consumer Financial Services Arbitrations Renders This Motion Moot

As Wells Fargo is aware, a decision to send Plaintiff's claim to the AAA for arbitration would not allow for adjudication by a true neutral party and would likely lead to a procedural dead end.  The CAA on which Wells Fargo's agreement with Plaintiff provides that "[e]ach arbitration, including the selection of the arbitrator(s) is administered by the American Arbitration Association (AAA)."  TX 1 at 6.  Before the AAA, however, Plaintiff would be forced to go before a party with financial ties to Wells Fargo and may not be provided any hearing at all.  The motion seeking transfer to the AAA is arguably moot in light of the AAA's moratorium.  *See, e.g., Bauchman v. West High Sch.,* 132 F.3d 542, 548 (10th Cir. 1997) (intervening development that resolves an issue moots a motion on that issue).

Admitting there are "weaknesses" in its procedures, the AAA announced it was stopping all arbitrations initiated by businesses involving "consumer finance matter[s]."  *Id.*  Plaintiffs filed this class action in federal court, not with the AAA.  Wells Fargo is the party that is attempting to initiate a proceeding in the AAA relating to this "consumer finance matter."  Accordingly, under its own rule, the AAA should not even hear the matter.

Even if the AAA were willing to arbitrate this dispute, Wells Fargo is one of the businesses that regularly appears before, and pays, the AAA.  The acknowledged "weaknesses" and probable conflicts of interest in AAA proceedings defeat any assumption that the AAA could give this dispute a fair hearing.  Indeed, AAA representatives testified before a congressional subcommittee that the following areas of its business "need attention":  "consumer notification, arbitrator neutrality, pleading and evidentiary standards, respondents' defenses and counterclaims, and arbitrator training and recruitment."  TX 57.[5]

---

[5] For claims under $10,000, Wells Fargo pays the entirety of the arbitrator's fee over $125, and pays AAA an administrative fee of $750, plus an additional $200 if a hearing is held.  *See* TX 58.  Accordingly, like NAF, the neutrality of arbitrators made available through the AAA, and the AAA itself, may reasonably be called into question.

1    Just as a dispute should not be transferred on *forum non conveniens* grounds to a

2    jurisdiction where due process is lacking, the Court should decline to transfer this dispute to the

3    AAA.  *See Shankle v. B-G Maint. Mgmt. of Colorado, Inc.,* 163 F.3d 1230, 1234 (10th Cir. 1999)

4    ("an arbitration agreement that prohibits use of the judicial forum as a means of resolving statutory

5    claims must also provide for an effective and accessible alternative forum."); *State ex rel. Dunlap*

6    *v. Berger,* 567 S.E.2d 265, 279-80 (W. Va. 2002) (finding that "the FAA does not operate to

7    require that rights to an effective forum be surrendered"); *Canadian Overseas Ores, Ltd. v.*

8    *Compania de Acero del Pacifico S.A.,* 528 F. Supp. 1337, 1342-43 (S.D.N.Y. 1982) (declining to

9    transfer case to Chile because evidence showed that a military junta controlled the courts,

10   preventing a fair hearing).  The AAA's admitted shortcomings – and the concerns that have

11   recently come to light about fundamental fairness and conflicts of interest in consumer finance

12   arbitrations – demonstrate that this case should not be arbitrated by the AAA.

**D.     The Court Should Not Defer Ruling Pending the Question of Transfer to the MDL**

14   Wells Fargo asks that the Court defer any ruling on the issue of arbitration until the JPML

15   has ruled as to whether this case will be transferred as part of a larger MDL so as to preserve

16   judicial resources.  This justification rings hollow.  If the Court enforces the terms of the applicable

17   contract as stated in the Signature Card Agreement and refers the party to arbitration before a

18   neutral in which Plaintiffs may seek to certify a class, this will not be subject to transfer to the

19   MDL and judicial resources will be all the more preserved.[6]  Whether or not to grant a stay is

20   within the Court's discretion and a stay is appropriate when it serves the interests of judicial

21   economy and efficiency.  *See* Wright, Miller & Cooper, FEDERAL PRACTICE AND PROCEDURE

22   § 3866 (1986).  Deferring this decision serves no such interests.

### IV.     CONCLUSION

24   For the foregoing reasons, the Court should either deny Wells Fargo's motion or defer

25   ruling on it until after the JPML has decided the pending transfer-related motions.

---

[6] It is also worth noting that Wells Fargo has moved to enforce an arbitration agreement in another case that is subject to a conditional transfer order.  *See* Motion at 6 n. 3.  Yet Wells Fargo has not asked that court to defer decision regarding its motion to compel arbitration.

PLAINTIFFS' RESPONSE TO MOTION TO COMPEL ARBITRATION

-13-

1  DATED:  August 20, 2009.

2                                            HAGENS BERMAN SOBOL SHAPIRO LLP

3

4                                            By:   s/ Ari Y. Brown
                                                 Steve W. Berman
5                                                Ari Y. Brown
                                                 Genessa Stout
6                                            HAGENS BERMAN SOBOL SHAPIRO LLP
7                                            1301 Fifth Avenue, Suite 2900
                                             Seattle, WA  98101
8                                            Telephone:  (206) 623-7292
                                             Facsimile:  (206) 623-0594
9                                            steve@hbsslaw.com
                                             ari@hbsslaw.com
10                                           genessa@hbsslaw.com

11                                           REED R. KATHREIN
12                                           715 Hearst Ave., Suite 202
                                             Berkeley, CA 94710
13                                           Telephone: (510) 725-3000
                                             Facsimile: (510) 725-3001
14                                           reed@hbsslaw.com

15                                           Joseph G. Sauder
16                                           Matthew D. Schelkopf
                                             CHIMICLES & TIKELLIS LLP
17                                           One Haverford Centre
                                             361 West Lancaster Avenue
18                                           Haverford, PA 19041
19                                           Telephone: (610) 642-8500
                                             Facsimile: (610) 649-3633
20                                           JosephSauder@chimicles.com
                                             MatthewSchelkopf@chimicles.com
21

22                                           Christopher G. Hayes
                                             LAW OFFICE OF CHRISTOPHER G. HAYES
23                                           225 South Church Street
                                             West Chester, PA 19382
24                                           Telephone: (610)-431-9505
                                             Facsimile: (610)-431-1269
25                                           chris@chayeslaw.com

26                                           Attorneys for Plaintiffs

27

28

PLAINTIFFS' RESPONSE TO MOTION TO COMPEL
ARBITRATION                                       -14-
010080-12 322707 V1

**CERTIFICATE OF SERVICE**

On August 20, 2009, I caused to be electronically filed the foregoing with the Clerk of the

Court using the CM/ECF system, which will send notification of such filing to the following

attorneys of record:

- **Steve W. Berman**
  steve@hbsslaw.com
- **Jeff D. Friedman**
  jefff@hbsslaw.com
- **David M. Jolley**
  djolley@cov.com
- **Reed R. Kathrein**
  reed@hbsslaw.com
- **Margaret G. May**
  mmay@cov.com, bschmitt@cov.com,
  mcanalita@cov.com, ssassaman@cov.com
- **Sonya Diane Winner**
  winnersd@cov.com,jyim@cov.com, hsalazar@cov.com


HAGENS BERMAN SOBOL SHAPIRO LLP


By:    s/ Ari Y. Brown
              Ari Y. Brown